**CONSOLIDATION COAL COMPANY, a corporation, Plaintiff,**

v.

**LOCAL UNION NO. 1993, UNITED MINE WORKERS OF AMERICA, et al., Defendants.**

**Civ. A. No. 75–156.**

United States District Court,
W. D. Pennsylvania.

March 6, 1975.

Harold R. Schmidt, Raymond G. Hasley, Pittsburgh, Pa., for plaintiff.

Kenneth Yablonski, Washington, Pa., and Nick C. King, Pittsburgh, Pa., for defendants.

## OPINION

ROSENBERG, District Judge.

The plaintiff, Consolidation Coal Company, operates several coal mines in the Western District of Pennsylvania. One of these is the Renton mine which employs members of Local Union 1993 of the United Mine Workers. The Renton mine produces high grade bituminous coal on a three-shift daily basis for five days in each week. The maintenance and repair of equipment and mine interior is performed on a daily basis where such can be done, but as necessary, maintenance, repair and replacement work is performed on Saturdays, known to the parties as idle days to insure steady production for the forthcoming work days. On some occasions mining of coal has also been scheduled on Saturdays during the past several years. When the employees are required to perform Saturday work, they are notified on the Thursday preceding the Saturday for which the work is scheduled. The work done on Saturday is considered as premium work under the 1974 Agreement (Article IV, § (d)(1)), since such employees are paid a higher rate of pay.

Commencing on January 11, 1975, the employees demonstrated a collective and concerted refusal to report to work on Saturday. When the management scheduled supervisors to perform maintenance work because the Local Union members refused to do so, the membership demanded ten shifts pay for that which was paid to the supervisors. Because of the denial to pay such and the assertion that the company gave them too many "no's" to their grievances, the members collectively and in mass stopped total work on February 3rd. Subsequent to the issuance of the temporary restraining order on February 5th, the members returned to work but con-

tinued to refuse to perform Saturday work, maintaining that Saturday work was optional without any obligation on their part to perform any work under the Agreement.

The issues presented by the parties here can only be determined under the provisions of § 301 of the Labor Management Relations Act of 1947 as amended (29 U.S.C. § 185) on the rights of the parties under their agreement of employment and management.

 Article IV, § (d)(2) of the 1974 Agreement provides, "Work on the seventh consecutive day and holidays is optional." There is no other mention of any other "optional" day if scheduled by management. Thus, it would seem that any logical interpretation of the Agreement does not give the Union members, as miners, an option to deny the work obligation on the sixth day which is Saturday. In any event, a collective mass denial of a questionable workday such as Saturday amounts to a work stoppage.

The 1974 Agreement also provides for the avoidance of work stoppages and prescribes a series of grievance and compromise processes by which disputes may be determined for the purpose of continuing work. The 1974 Agreement also states in Article XXVII:

"The United Mine Worker of America and the Employers agree and affirm that, except as provided herein, they will maintain the integrity of this contract and that all disputes and claims which are not settled by agreement shall be settled by the machinery provided in the 'Settlement of Disputes' Article of this Agreement unless national in character in which event the parties shall settle such disputes by free collective bargaining as heretofore practiced in the industry, it being the purpose of this provision to provide for the settlement of all such disputes and claims through the machinery in this contract and by collective bargaining without recourse to the courts."

The grievance machinery process is quite instructive. There are three bases upon which processes proceed: one relates to health and safety (Article III, § (p)); the second relates to general grievances and disputes (Article XXIII); and the third relates to employee dismissals (Article XXIV). Here we are concerned only with the second. Without quoting all of Article XXIII relating to general grievances and disputes, it provides for a series of steps when a dispute arises between labor and management. The first step requires only that an aggrieved employee make his complaint to his foreman. The second step provides that the complaint be taken by a Mine Committee to the mine management within seven working days and reduced to a writing on a grievance form. If no satisfaction is obtained there within the next seven days the grievance must be referred to the United Mine Workers District Representative designated for that purpose and to a representative of the employer. If no satisfaction is obtained there, the next step requires that, within 10 calendar days, it be referred to a specially constituted arbitration panel. Thereafter an appeal from the panel can be taken to an Arbitration Review Board whose determination is final.

While the defendants contended that too many of their complaints received no replies from management, they demonstrated reluctance to avail themselves of the grievance and arbitration machinery. Thus when the employees themselves refused to perform their work in accordance with the undertaking in the Agreement to work on Saturday, they became obstructive to management functioning by first making demands for money, the entitlement of which is questionable, and then, collectively walking out, and thus stopping the functions of the operation, particularly in the maintenance and repair of machinery required for the forthcoming week's work in the mine.

The difficulty with the employee members is that they adopted their own

interpretation as to the meaning of the Agreement and of the Agreement's significance in their own undertakings. In other words, there was a demonstrated attitude on the part of the Union members of non-responsibility for the terms of the Agreement and so on whim or fancy defeated any obligations entered into in the 1974 Agreement.

■■ Such an inconsistent attitude, if manifested by all local unions of a particular branch of labor, such as the United Mine Workers of America, would create chaotic employment and harmful results to property and the public welfare. It is, therefore, incumbent upon those who are members of these unions to be cognizant of their rights and assume their responsibilities, and, further, to recognize that when and if a dispute occurs, their remedy is by the process of grievance and arbitration. Since the Agreement gives the Union and employees the right to grieve and arbitrate a dispute, that remedy must be pursued in preference to a work stoppage. Island Creek Coal Company v. United Mine Workers of America, District 2, et al., 507 F.2d 650, 652, C.A.3, 1975. The settlement of disputes provisions were bargained for and the parties have undertaken to live by them during the term of the contract. As in *Island Creek Coal Company, supra,* it is unquestionable that "The grievance-arbitration clause in this case is unusually broad; broad enough to permit the arbitrator to decide issues which the parties did not specifically resolve in the bargaining process." (at page 653).

■ The defendants also contend that unless a dispatcher is assigned to the Saturday employment for maintenance and repair workers, that they are not required to enter the mine for safety reasons. The difficulty with this contention is that it is not viewed by the defendants as a dispute and yet is a cause for work stoppage. This contention cannot support the defendants since any local trouble of any kind arising at the mine is to be read broadly even to encompass disputes over mine safety. Gateway Coal Co. v. United Mine Workers, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed. 2d 583 (1974); *Island Creek Coal Company, supra,* 507 F.2d at page 651.

Evidence was presented by the plaintiff to the effect that the District officers and an International Board member had not earnestly endeavored to maintain the integrity of the Agreement in accordance with their undertaking. I do not consider this evidence as final to the effect that representatives of the district and international union failed to perform in accordance with their obligations under the 1974 Agreement. However, any preliminary injunction which is required as of now will be less useful against the District and the International, except insofar as they will be required to comply with the arbitration procedure set up in the Agreement, and in the meantime to see to it that the members of the Local Union maintain their work application as required by the Agreement. This is so because it has been demonstrated that loss of tonnage has accrued in the mines by reason of the refusal of the men to work on Saturdays and by reason of their potential inclination to suddenly and without notice engage in a walkout, thus providing crippling devices in the production of coal by the plaintiff.

■ I find that irreparable injury will result unless injunctive relief is granted to the plaintiff; and, based only upon the evidence presented before me to the date of the hearing for the preliminary injunction, I also find it likely that the plaintiff will prevail after a final hearing in the case. However, this is not certain since the parties are now encouraged to enter into immediate discovery, and as quickly as may be a final hearing will be scheduled, when the evidence may be different or provide different supports for either or both parties. As of now, I find that the plaintiff is in equity entitled to a preliminary injunction and one will be issued.